COLLISION CENTER PAINT & BODY, INC., Appellant,

v.

James CAMPBELL, d/b/a E–Z Ride Auto Sales, Appellee.

No. 05–88–00178–CV.

Court of Appeals of Texas, Dallas.

May 2, 1989.

Rehearing Denied June 14, 1989.

---

Jerry L. Hughes, Dallas, for appellant.

Michael W. Stucker, Dallas, for appellee.

Before HOWELL, McCLUNG and ROWE, JJ.

HOWELL, Justice.

This is a dispute between a recorded lienholder on a certificate of automobile title, appellee James Campbell doing business as E–Z Ride Auto Sales (Lienholder), and a possessory lienholder, appellant Collision Center Paint and Body (Repairman). The trial court entered a judgment *non obstante veredicto*, concluding that Repairman was entitled to recover only the amount specified in a statutory worker's lien notice and ordering Repairman to return possession of the automobile to Lienholder. For the reasons recited below, we agree with the trial court's action and affirm the judgment.

Lienholder sold a 1975 MG Midget to Greg Gomez, retaining a purchase money lien for the sale price as noted on the certificate of title. Gomez took the car to Repairman for painting, but he subsequently defaulted on both the payments to Lienholder as well as the repair costs owed to Repairman. Gomez never picked up the car from Repairman, so the paint shop stored the automobile while awaiting payment. When Repairman could not secure payment from Gomez, it contacted Texas Title and Transfer and had that firm send out a statutory worker's lien notice, pursuant to Texas Property Code section 70.006, to Gomez and the lienholder of record, Lienholder. The notice, dated September 24, 1986, stated that charges of $709 were owed to Repairman, and that if the amount remained unpaid for thirty days, Repairman would sell the car at a public sale and apply the proceeds to the debt.

Lienholder's president, James Campbell, testified that upon receipt of the notice he went in person to Repairman to discuss the situation with Repairman's president, Reg Van Meter. Campbell testified that he offered to pay the $709 recited in the notice, but that Van Meter refused, claiming additional charges had accrued since the time of the notice. Lienholder's attorney, Michael Cantrell, testified that he also attempted to pay the $709 to Van Meter, and that Van Meter also refused this offer of payment. Following these attempts to settle the dispute, Lienholder filed suit and obtained a temporary injunction preventing Repairman from selling the car.

In three points of error, Repairman challenges the trial court's action in disregarding and vacating the jury answers favorable to Repairman. By its fourth point, Repairman claims that the trial court erred in deeming admitted Lienholder's requests for admissions. In its brief, Repairman has failed to present any argument or authority on this fourth point, in violation of Rule 74 of the Texas Rules of Appellate Procedure. Although we are not compelled to consider unbriefed points,[1] we have decided to address this procedural point regarding the preclusive effect of the deemed admissions.

1. *See Olson v. Texas Commerce Bank*, 715 S.W.2d 764, 768 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

■ Lienholder mailed requests for admissions to Repairman's attorney on March 9, 1987. Repairman mailed its responses on April 16, 1987. Simple calculation reveals these responses were served more than thirty days from the date of service of the requests and thus were untimely; the thirtieth day was April 8. Even adding three days for service by mail (TEX.R. CIV.P. 21a) the responses were due April 13, 1987 at the latest.[2] As they were not served until April 16, 1987, they were untimely.[3]

■ The Rules of Civil Procedure provide that requested matters are "admitted without necessity of a court order unless, within thirty (30) days after service of the request, ... the party to whom the request is directed serves upon the party requesting the admission a written answer...." TEX.R.CIV.P. 169(1). The rule also allows amendment or withdrawal of deemed admissions upon a showing of good cause. TEX.R.CIV.P. 169(2). Even though the rule itself deems the requests admitted, Lienholder orally moved the court to deem admitted the requested matters. After hearing evidence from both sides, the trial court found Repairman had not shown good cause for the untimely responses and deemed the requests admitted. We see no error in the court's action. Inasmuch as it was consistent with rule 169, we overrule Repairman's point of error four.

■ In the ordinary case, these deemed admissions would be conclusive proof of the matters admitted. See, e.g., Shaw v. National County Mut. Ins. Co., 723 S.W.2d 236, 238 (Tex.App.—Houston [1st Dist.] 1986, no writ); Curry v. Clayton, 715 S.W.2d 77, 78 n. 2 (Tex.App.—Dallas 1986, no writ); Laycox v. Jaroma, Inc., 709 S.W.2d 2, 4 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). We reiterate that

an admission, deemed or otherwise, is a judicial admission; a party may not subsequently introduce testimony to controvert it. Whitworth v. Kuhn, 734 S.W.2d 108, 111 (Tex.App.—Austin 1987, no writ); Shaw, 723 S.W.2d at 238. However, a party relying upon an opponent's judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted. Hurlbut v. Gulf Atlantic Life Ins. Co., 749 S.W.2d 762, 765 (Tex.1987); Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 769 (Tex.1983). A party waives the right to rely upon an opponent's deemed admissions unless objection is made to the introduction of evidence contrary to those admissions. Marshall v. Vise, 32 Tex.Supp.Ct.J. 290, 291 (Mar. 29, 1989).

In the case at bar, however, Lienholder allowed without objection some testimony contrary to the deemed admissions. Repairman's president, Reg Van Meter, testified on direct examination that Lienholder never tendered the full amount actually due—$709 in repair charges, $3,800 in storage charges, and $1,500 in attorney's fees.[4] Therefore, we hold that Lienholder waived the right to rely on the deemed admissions as conclusive proof of tender because he failed to protect the record and object to the admission of controverting evidence offered by Repairman.

Thus, without considering the deemed admissions, we now turn to Repairman's three remaining points of error: whether the trial court erred in granting a judgment non obstante veredicto. A trial court's granting of a judgment notwithstanding the verdict will be upheld on appeal only if there is no evidence to support the jury findings. Dowling v. NADW Mktg., Inc., 631 S.W.2d 726, 728 (Tex.1982). This requires a determination that there is more

---

**2.** April 11, 1987 was a Saturday; therefore the responses were due the following Monday.

**3.** Service of the requests was made upon Repairman's successor attorney, who had notified Lienholder's attorney by letter on January 27, 1987 that he "now" represented Repairman and that "all correspondence ... should be directed to [him]." The fact that counsel did not advise

the court of his substitution until his motion in April did not affect the validity of the service. Thus, the recent decision of this Court in White v. Tricontinental Leasing Corp., 760 S.W.2d 23 (Tex.App.—Dallas 1988, no writ) is distinguishable from the case at bar.

**4.** Although we note that these amounts were not claimed in the statutory notice.

than a scintilla of evidence upon which the jury could make its findings. The court must review the evidence in its most favorable light, considering only evidence and inferences which support findings, and rejecting evidence and inferences contrary to the jury findings. *E.g., Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987); *Miller v. Bock Laundry Mach. Co.*, 568 S.W.2d 648, 649–50 (Tex.1977). *See also Atrium Boutique v. Dallas Mkt. Center Co.*, 696 S.W.2d 197, 198–99 (Tex.App.—Dallas 1985, writ ref'd n.r.e). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, no evidence. *Kindred v. Con/Chem Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

◼︎ Section 70.006 of the Texas Property Code governs the sale of a motor vehicle subject to a worker's lien.[5] A worker who retains possession for thirty days after the charges accrue must send a written notice to the owner and any recorded lienholder; the notice must include the amount of the charges and a request for payment. TEX.PROP.CODE ANN. § 70.006(a) (Vernon 1984). If the charges are not paid within thirty days after the notice is mailed, the worker may sell the vehicle at a public sale and apply the proceeds to the debt. *Id.* § 70.006(b). We find few reported cases construing this statute, and no case which specifically addresses the situation now at hand: whether a good faith tender of payment within the thirty days and for the amount stated in the statutory notice discharges the lien so that further retention of the vehicle constitutes conversion. Viewing the language and intent of the statute, we hold that a proper tender of the amount claimed in the notice is sufficient; the possessory lien expires upon tender the same as if the tendered amount had been retained; the subsequent refusal to surrender the car to the lienholder constitutes conversion.

◼︎ "Tender" is an unconditional offer by a debtor to pay a sum of money not less than the amount due on the obligation. *Baucum v. Great Am. Ins. Co. of N.Y.*, 370 S.W.2d 863, 866 (Tex.1963); *Veale v. Rose*, 657 S.W.2d 834, 839 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Stratton v. Del Valle Indep. School Dist.*, 547 S.W.2d 727, 729 (Tex.Civ.App.—Austin 1977, no writ). As a general rule, a tender of payment must include everything to which the creditor is entitled; any less sum is ineffectual. *French v. May*, 484 S.W.2d 420, 426 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). Plainly, the case at bar hinges on the above-recited language concerning "the amount due on the obligation" and the amount "to which the creditor is entitled." In this case, Repairman sent the statutory notice claiming that $709 was due and owing, even though it later claimed that additional storage fees of $3,800 and attorney's fees of $1,500 were due and owing. We do not reach any question as to a repairman's right to amend his notice before a tender is made, because such amendment never occurred in this case. We conclude that Repairman was bound by the amount it claimed in the statutory notice. When Lienholder tendered the $709, it complied with section 70.006 of the Property Code, and Repairman's lien was thereby discharged.[6] Without amending the notice, Repairman could claim no more than $709.

Evidence of Lienholder's proper tender is found in the testimony of Lienholder's several witnesses and even in the testimony of Repairman's own president, Reg Van Meter. Van Meter testified that he called Lienholder after the notice was sent to discuss the status of the automobile. He was told that Lienholder had already obtained a cashier's check for $709 plus $65 for storage fees, and Lienholder was prepared to pay the amount recited in the

---

5. A worker's lien arises under section 70.001 when a worker labors to repair a motor vehicle; the worker may retain possession of the vehicle until paid. TEX.PROP.CODE ANN. § 70.001 (Vernon 1984).

6. In fact, at one point Campbell and Cantrell tendered $709 plus $65 for storage fees, more than required by the statutory notice.

statutory notice. According to Van Meter's testimony, this offer of payment was made between September 29 and October 2, 1986, well within the thirty-day time limit of the statute. On cross-examination, Van Meter conceded that during this time he refused to accept the $709, refused to accept the $774, and continued to request additional payment for storage fees.

Viewing the evidence in the light most favorable to the jury's responses, we find no probative evidence to support the jury's answer that no proper tender of the amount claimed in the statutory notice was made by Lienholder. In fact, all of the probative evidence is directly contrary to this finding, as we have noted above. The jury obviously disregarded the witnesses' testimony just summarized. We conclude that any evidence relied upon by the jury in deciding that no tender of payment occurred was, at most, a mere scintilla. We therefore hold that the trial court did not err in disregarding special issue number one and in granting Lienholder's motion for judgment *non obstante veredicto.* We overrule points one through three, and we affirm the trial court's judgment.