# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00729-CV

**Terry Swanson, Appellant**

**v.**

**State of Texas and County of Travis, Appellees**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-16-006013, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a justice court ordered that six of Terry Swanson's dogs be humanely destroyed, *see* Tex. Health & Safety Code § 822.003(d) (requiring trial court to order that dog be "destroyed if the court finds that the dog caused the death of a person"), Swanson appealed that determination for a trial de novo, *see* Tex. R. Civ. P. 506.3 (mandating that appeal from justice court "be tried de novo in the county court"). Prior to the trial de novo, the State of Texas and the County of Travis (collectively the "State") sent Swanson discovery requests, including several requests for admissions, but Swanson did not timely respond to those requests. *See id.* R. 198.1 (allowing party to "serve on another party . . . written requests that the other party admit the truth of any matter within the scope of discovery"). After the deadline for responding passed, the State moved for summary judgment, urged that the requests were deemed admitted because they were untimely, and argued that the State was, therefore, entitled to judgment as a matter of law. *See id.* § 198.2(c) (describing effect

of failure to respond to request for admission); *see also id.* § 166a (governing motions for summary judgment). In response, Swanson filed a motion to amend or withdraw the deemed admissions. *See id.* § 198.3 (authorizing trial court to "permit the party to withdraw or amend the admission" if certain criteria are met). The trial court convened a hearing on the motions and ultimately denied Swanson's motion to amend or withdraw and granted the State's motion for summary judgment. Swanson appeals the trial court's order granting the State's motion for summary judgment based on the deemed admissions. We will reverse the trial court's order granting summary judgment and remand for further proceedings.

## BACKGROUND

In 2016, the Travis County Sheriff's Office received a report regarding a dead body discovered in the yard of a home. Upon arriving at the home, the responding officers found the body of Erin McCleskey, who did not live at the home and who had been attempting to execute service of process at the home when she died. The responding officers also observed that McCleskey's body appeared to be covered in bite marks, scratches, and abrasions and that there were six dogs on the property. Animal Protection Officers were called to the scene to take custody of the dogs. Subsequently, a hearing was called in a justice court "to determine whether the dog[s] caused the death" of McCleskey "by attacking, biting, or mauling" her. *See* Tex. Health & Safety Code § 822.003(a). At the end of the hearing, the justice court issued an order of disposition concluding that Swanson was the owner of the six dogs; that the dogs "attacked, bit and mauled . . . McClesk[e]y, causing her death"; and that the "dogs shall be humanely destroyed." *See id.* § 822.003(d).

2

Following the ruling by the justice court, Swanson appealed that determination, and a trial de novo was set for October 31, 2016, in the trial court. After the trial date was set, the State sent to Swanson various discovery requests, including the following eight requests for admission that form the basis for this appeal: whether "McCleskey's death was caused by the dogs mauling, biting and/or attacking her"; whether "McCleskey's death was caused by some of the dogs mauling, biting and/or attacking her"; and whether each of the six dogs individually "caused in full or part the death of . . . McCleskey." The deadline for responding to the requested admissions was September 12, 2016. On September 16, 2016, Swanson sent an email to the State acknowledging that his responses were late, and on September 18, 2016, Swanson sent his responses to the discovery requests.

After receiving Swanson's responses, the State filed a motion for summary judgment, urging that the dogs caused McCleskey's death and should be humanely destroyed. In its motion, the State asserted that it sent discovery requests to Swanson that were "due on or before September 12, 2016"; that Swanson did not "attempt to make any effort to reply to the discovery responses until he sent an email on . . . September 16, 2016, acknowledging the delay"; and that Swanson "sent incomplete responses to" the discovery requests on "September 18, 2016." Further, the State attached as exhibits the requests for discovery and the email from Swanson acknowledging that he failed to timely reply to the discovery requests. In light of the failure to timely respond, the State asserted that all of the requests were deemed admitted. *See* Tex. R. Civ. P. 198.2(c) (explaining that "[i]f a response is not timely served, the request is considered admitted without the necessity of a court order"). Accordingly, the State urged that there were no factual disputes in this case. Further, the State argued that because the dogs were deemed to have caused McCleskey's death, the trial

3

court was required to enter an order that the dogs be humanely destroyed. *See* Tex. Health & Safety Code § 822.003(d).

In response, Swanson filed a motion to withdraw or amend his deemed admissions. *See* Tex. R. Civ. P. 198.3 (setting out circumstances in which trial "court may permit the party to withdraw or amend the admission"). In the motion, Swanson stated that Robert McCray was the main caretaker for the dogs and was "the only person able to truthfully answer" many of the discovery requests; that he had been unsuccessful in his attempts to contact McCray; that he finally made contact with McCray four days after the deadline for responding had passed; that he learned that McCray had sustained a serious neck and back injury in August 2016 and had been incapacitated since the injury; that he emailed the State the responses to the discovery requests on September 18, 2016, and informed the State about the delay caused by McCray's injury; and that "[t]he delay ultimately falls on Defense counsel for not being familiar with the rules of discovery" and for not "seeking an agreement to extend the deadline or seeking an order from the court. Defense counsel practices mainly criminal defense law and the delay was not intentional or the result of conscious indifference by Defense counsel." In addition, Swanson included the amended responses to the requests for admissions in which he denied that McCleskey's death was caused by a dog attack and specifically denied that any of his six dogs were involved. Further, Swanson attached as an exhibit his response to the State's discovery requests that he emailed to the State on September 18, 2016, containing, among other responses, the denials discussed above.

After the motions were filed, the trial court convened a hearing on the motion to withdraw or amend. In the hearing, Swanson repeated his arguments regarding his inability to contact

4

McCray and admitted that he did not attempt to extend the deadline for filing a response. At the end of the hearing, the trial court denied the motion to withdraw or amend. Following that ruling, the trial court granted the State's motion for summary judgment and ordered that the six dogs "be humanely destroyed."

## STANDARD OF REVIEW AND GOVERNING LAW

Appellate courts "review a trial court's decision to permit or deny withdrawal of deemed admissions for an abuse of discretion." *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 665 (Tex. App.—San Antonio 2014, pet. denied). Accordingly, "[a]n appellate court should set aside a trial court's ruling only if, after reviewing the entire record, it is clear that the trial court abused its discretion." *Tommy Gio, Inc. v. Dunlop*, 348 S.W.3d 503, 509 (Tex. App.—Dallas 2011, pet. denied). "Although trial courts have broad discretion to permit or deny the withdrawal of deemed admissions, they cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles." *Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011).

Under the Rules of Civil Procedure, a trial court "may permit the party to withdraw or amend the admission if . . . the party shows good cause for the withdrawal or amendment" and if "the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved by permitting the party to amend or withdraw the admission." Tex. R. Civ. P. 198.3. "A trial court has broad discretion to permit or deny the withdrawal of deemed admissions." *Tommy Gio, Inc.*, 348 S.W.3d at 508. Generally speaking, "[t]he burden is on the party seeking withdrawal to establish good cause by proving that he did not intentionally or consciously disregard his obligation to timely

5

answer." *See Steffan v. Steffan*, 29 S.W.3d 627, 631 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). "The failure to answer must have been accidental or the result of mistake, rather than intentional or the result of conscious indifference." *Id.* "Even a slight excuse will suffice, especially when delay or prejudice to the opposing party will not result." *Spiecker v. Petroff*, 971 S.W.2d 536, 538 (Tex. App.—Dallas 1997, no pet.). "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005).

However, "[a] different standard applies when the deemed admissions are merit-preclusive." *In re Sewell*, 472 S.W.3d 449, 455 (Tex. App.—Texarkana 2015, orig. proceeding), *overruled on other grounds by In re Bayview Loan Servicing, LLC*, No. 06-17-00040-CV, 2017 Tex. App. LEXIS 2788, at *3 n.3 (Tex. App.—Texarkana Mar. 31, 2017, orig. proceeding). If admissions are used "to try to preclude presentation of the merits of a case," then due-process concerns are present. *Wheeler*, 157 S.W.3d at 443. "By denying a motion to withdraw merit-preclusive admissions, the trial court effectively enters a case-ending discovery sanction." *In re Sewell*, 472 S.W.3d at 455-56; *see also Marino*, 355 S.W.3d at 632, 634 (providing that "when admissions are deemed as a discovery sanction to preclude a presentation of the merits, they implicate the same due process concerns as other case-ending discovery sanctions" and that "[c]onstitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults"); *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (noting that there are constitutional restrictions on power of court to dismiss action without providing opportunity for hearing on merits). "Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless

6

a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Powell*, 811 S.W.2d at 918. Accordingly, there must be "a showing of 'flagrant bad faith or callous disregard for the rules' to substantiate a summary judgment based solely on deemed admissions." *Marino*, 355 S.W.3d at 633 (quoting *Wheeler*, 157 S.W.3d at 443-44); *see also Wheeler*, 157 S.W.3d at 443 (stating that in absence of "flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions"). "Bad faith is not simply bad judgment or negligence, but the conscious doing of a wrong for dishonest, discriminatory or malicious purpose." *Armstrong v. Collin Cty. Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.—Dallas 2007, no pet.); *cf. Cire v. Cummings*, 134 S.W.3d 835, 837, 842-43 (Tex. 2004) (affirming imposition of death-penalty sanctions where party "deliberately destroyed" tapes at center of dispute after trial court ordered party to produce tapes).

"[A]lthough a party moving to withdraw admissions ordinarily must prove the requirements of Rule 198.3, when the deemed admissions are merit-preclusive, good cause exists absent bad faith or callous disregard of the rules by the party seeking the withdrawal," and "it is presumed that presentation of the merits would be served by allowing withdrawal of the deemed admissions." *In re Sewell*, 472 S.W.3d at 456. Moreover, when the deemed admissions are merits preclusive, the burden of establishing "bad faith or callous disregard" is on "the party opposing withdrawal." *Time Warner*, 441 S.W.3d at 666.

## DISCUSSION

In his sole issue on appeal, Swanson contends that the trial court abused its discretion by denying his motion to withdraw or amend the deemed admissions and that the trial

7

court erred by granting the State's motion for summary judgment based on the deemed admissions. In presenting this appeal, Swanson limits his challenge to the eight requests for admission summarized above and does not otherwise address the remaining discovery requests. Accordingly, in considering this appeal, we limit our discussion to the eight admissions forming the basis for the summary-judgment ruling. In its appellee's brief, the State contends that there is no evidence in the record showing that Swanson attempted to obtain information regarding the requests for admission from other sources after being unable to contact McCray, that the discovery requests "were unlikely to require further input from either . . . Swanson or . . . McCray," that the deadline for responding was listed in the discovery requests, that Swanson never sought an extension to respond to the requests, and that Swanson did not familiarize himself with the governing Rules of Civil Procedure. For these reasons, the State contends that Swanson exhibited "conscious indifference" and "a callous disregard for the rules of discovery" and that Swanson failed to show a lack of undue prejudice to the State. *Cf. Wheeler*, 157 S.W.3d at 442 & n.1 (noting before discussing due-process implications from merits-preclusive admissions that failure to timely comply with deadline for responding to discovery requests did not compel conclusion that conduct was intentional or result of conscious indifference by pro se defendant but that different conclusion might have been warranted if defendant had been represented by attorney).

As set out above, the State's motion for summary judgment was based on the eight deemed admissions, and the trial court's decision to grant summary judgment in the State's favor was, therefore, also based on the deemed admissions that the trial court did not allow Swanson to withdraw or amend. "Accordingly, because the requests for admission . . . had a merits-preclusive

8

effect, the resulting due process concerns establish good cause for their withdrawal." *Time Warner*, 441 S.W.3d at 666. Moreover, nothing in the record contradicts that determination because there is no evidence establishing that Swanson "acted with bad faith or callous disregard of the rules of procedure." *See id.* Although Swanson acknowledged that his response was untimely and admitted that his lack of familiarity with the Rules of Civil Procedure resulted in his failing to request an extension of time to file a response, there is no indication in the record that Swanson acted with malicious intent when he failed to timely respond. On the contrary, Swanson notified the State that his response was not timely and explained in his response and during the hearing that he made several efforts to contact the individual with knowledge of the information pertaining to some of the discovery requests but that McCray had sustained a significant injury. In addition, Swanson stated that he was finally able to get in contact with McCray four days after the deadline for responding had passed and that he sent his response to the State two days after talking with McCray. *See Wheeler*, 157 S.W.3d at 443-44 (finding "no evidence of flagrant bad faith or callous disregard for the rules" where summary judgment was granted "solely because . . . responses were two days late"). Furthermore, Swanson filed his motion to withdraw or amend two days after the State filed its motion for summary judgment based on the deemed admissions.

Moreover, there is nothing in the record to support a determination that the State was unduly prejudiced by the delay in filing the response. As discussed earlier, Swanson sent his response to the State just a few days after the deadline and before the State filed its motion for summary judgment, and the State received the response more than a month before the scheduled trial date. *See Marino*, 355 S.W.3d at 630, 633, 634 (reversing appellate court's judgment affirming

9

trial court's decision "rendering summary judgment on deemed admissions" when response to request for production "was a day late" but was "received before the other party moved for summary judgment on deemed admissions"); *Wheeler*, 157 S.W.3d at 441, 443 (concluding that record did not show that party would "suffer any undue prejudice if the admissions were withdrawn" where responses were filed two days late but before summary-judgment motion "was heard"); *see also Watson v. Dallas Indep. Sch. Dist.*, 135 S.W.3d 208, 215 (Tex. App.—Waco 2004, no pet.) (explaining that "[u]ndue prejudice has generally been found in those instances in which a party waited until the day of trial or after to request the withdrawal of deemed admissions"), *overruled on other grounds by University of Tex. Med. Branch at Galveston v. Barrett*, 159 S.W.3d 631, 633 & n.6 (Tex. 2005).

Similarly, nothing in the record overcomes the presumption that the presentation of the merits will be served by allowing Swanson to withdraw his merits-preclusive-deemed admissions. *See In re Sewell*, 472 S.W.3d at 456; *see also Time Warner*, 441 S.W.3d at 669 (stating that because "the merits of this case were never truly litigated" and "because the case was decided on deemed admissions," "[t]here is no question that presentation of the merits would have been served by the trial court's withdrawal of the deemed admissions"); *In re Kellogg-Brown & Root, Inc.*, 45 S.W.3d 772, 777 (Tex. App.—Tyler 2001, orig. proceeding) (determining "that the presentation of the merits of the case would be served by withdrawal or amendment of . . . deemed admissions" where "the deemed admissions . . . would vitiate any substantive defense"); *cf. Wheeler*, 157 S.W.3d at 443 n.2 (noting that undue-prejudice requirement and requirement that presentation of merits will be subserved by allowing withdrawal "are different sides of the same coin").

For all of these reasons, we must conclude that the trial court abused its discretion when it denied Swanson's request to withdraw or amend his deemed admissions and "erred in rendering summary judgment on deemed admissions." *See Marino*, 355 S.W.3d at 634. Accordingly, we sustain Swanson's issue on appeal.

## CONCLUSION

Having sustained Swanson's sole issue on appeal, we reverse the trial court's order granting the State's summary-judgment motion and remand for further proceedings.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Goodwin

Reversed and Remanded

Filed:  May 2, 2017

11